UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EILEEN MASTRIO ADMINSTRATOR FOR<br>EILEEN PRENDERGAST, DECEASED,<br>    *Plaintiff*,<br>        *v.*<br>KATHLEEN SEBELIUS, SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br>    *Defendant*. | Civil No. 3:08cv1148 (JBA)<br><br>March 29, 2013 |

**RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND PARTIES'
OBJECTIONS TO MAGISTRATE JUDGE'S RULING**

Plaintiff Eileen Mastrio, as administrator for Eileen Prendergast, moves [Doc. # 52] under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for attorneys' fees, expenses, and costs against Defendant Kathleen Sebelius, as the Secretary of Health and Human Services. Magistrate Judge Margolis issued a Ruling [Doc. # 60] granting Plaintiff's motion in part, and awarding attorneys' fees in the amount of $32,717.04 and costs of $835.50, for a total of $33,552.54. Both parties have filed timely objections to the ruling. For the reasons that follow, Defendant's objections will be overruled, and Plaintiff's objections will be sustained in part, with the award modified accordingly.

**I.    Background**

The factual and procedural background of this action are presented in comprehensive detail on pages one through eight of Magistrate Judge Margolis's Ruling, and are incorporated by reference herein. Briefly, Plaintiff brought this suit for emergency injunctive relief to enjoin Defendant from continuing to deny coverage of Ms. Prendergast's home health services under Medicare Part C. Judge Nevas granted Plaintiff's motion for a Temporary Restraining Order (the "TRO") (*see* TRO [Doc. # 5]), and after the TRO expired, Ms. Prendergast received benefits until her death. As a result,

this case was administratively dismissed, to be reopened as of right upon motion of either party.  (*See* Order of Dismissal [Doc. # 35].)  After Ms. Prendergast's death, the case was reopened upon Plaintiff's motion (*see* Order [Doc. # 44]), and Plaintiff moved [Doc. # 52] for attorneys' fees under the EAJA.  In her Ruling on Plaintiff's fee petition, Magistrate Judge Margolis found that Plaintiff was entitled to her reasonable attorneys' fees and costs as a prevailing party under the EAJA, but reduced the requested amount on several grounds, arriving at an award of $33,552.54.

## II.     Legal Standard

"Attorneys' fee determinations are considered 'dispositive' for purposes of Rule 72 of the Federal Rules of Civil Procedure."  *McConnell v. ABC–Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009) (citing *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008)); *see also Rajaratnam v. Moyer*, 47 F.3d 922, 923–24 (7th Cir. 1995) (award of attorneys' fees under the EAJA is dispositive for purposes of magistrate judges' jurisdiction and subject to de novo review by the district court); *accord* Fed. R. Civ. P. 54(d)(2)(D) ("[A district court] may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.").  Pursuant to Rule 72(b)(3) a Magistrate Judge's recommended ruling on a dispositive pretrial matter is reviewed de novo by the district court.  Therefore, the Court will review de novo the parties' objections to Magistrate Judge Margolis's Ruling.

## III.    Discussion

Defendant makes several objections to the Ruling: (1) that the Court lacked subject matter jurisdiction over the action; (2) that Plaintiff's motion for attorneys' fees was untimely; (3) that Plaintiff was not a "prevailing party" under the EAJA; (4) that the

position taken by the Secretary was "substantially justified;" and (5) that special circumstances make an award in this case unjust.  (*See* Def.'s Obj. [Doc. # 64].)

Plaintiff opposes the Defendant's objections and also advances her own objections, arguing (1) that her "prevailing party status" is merely a threshold condition for fee eligibility and did not terminate after October 17, 2008 when the TRO expired, and (2) that particular fee reductions were unwarranted and improper:  (a) the wholesale disallowance of the work of two of her attorneys; (b) the "one–third" across–the–board reduction of her requested fees; and (c) the disallowance of the fees incurred in relation to the pending fee motion.  (*See* Pl.'s Obj. [Doc. # 61].)

### A.   Defendant's Objections

#### 1.   *Subject Matter Jurisdiction*

In her objection to the Ruling, Defendant renews her argument that the Court lacks subject matter jurisdiction over this case because Plaintiff failed to satisfy the exhaustion requirements under the Medicare Act.  Magistrate Judge Margolis declined to address Defendant's jurisdictional argument, finding that Defendant had abandoned this claim by failing to renew the original Motion to Dismiss on this ground.  (*See* Ruling at 8–9.)  However, "[l]itigants . . . cannot waive subject matter jurisdiction by express consent, conduct, or estoppel because they fail to challenge jurisdiction early in the proceedings."  *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 303 (2d Cir. 1994); *see also Clark v. Busey*, 959 F.2d 808, 810 (9th Cir. 1992) ("Subject matter jurisdiction to decide the merits of the underlying action is a 'condition precedent' to an award of fees or costs under the EAJA.")  Therefore, the Court will address the merits of Defendant's jurisdictional claims.

Under the Medicare Act, subject matter jurisdiction is conferred through 42 U.S.C. § 405(g), which provides for judicial review "after any final decision of the Secretary made after a hearing to which [the plaintiff] was a party."  There are two elements to the "final decision" requirement:  (1) the "jurisdictional," non–waivable requirement that a claim for benefits has been presented to the Secretary ("presentment"); and (2) the "waivable" requirement that the administrative remedies prescribed by the Secretary have been exhausted ("exhaustion").  *Mathews v. Elridge*, 424 U.S. 319, 328 (1976).

Defendant concedes that Plaintiff satisfies the presentment requirement of the jurisdictional analysis,[1] and the Court agrees with that conclusion.  The Second Circuit has recognized that where a plaintiff has previously established eligibility and has previously indicated her continued belief in the right to the benefits at issue, repeated requests for benefits after every adverse action are not required to satisfy the presentment requirement.  *See City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir. 1984) ("[W]e resist the view that jurisdiction is lacking where a claimant asserts eligibility after commencement of the continuing eligibility review process even though prior to the Secretary's initial determination.")  Here, Plaintiff's doctors and attorneys repeatedly challenged the determinations denying her coverage. (*See* Prendergast Decl. [Doc. # 4-4] ¶¶ 5–17.)  Furthermore, Plaintiff's counsel represented during oral argument that they had contacted the Boston regional office of the Department of Health and Human Services regarding the continued denial of Plaintiff's benefits.  Thus, Plaintiff has satisfied the presentment requirement.  *See City of New York*, 742 F.2d at 736 ("[A]ll a claimant

---

[1] At oral argument, defense counsel withdrew the argument from its original briefing that Plaintiff had failed to satisfy the presentment requirement.

need do is 'specifically present[] the claim that his benefits should not be terminated because he was still disabled.'" (citing *Heckler v. Lopez*, 464 U.S. 879 (1983))

Defendant mentioned the issue of exhaustion in passing in her opposition to Plaintiff's motion for fees (*see* Def.'s Opp'n [Doc. # 55] at 6), and in her objection to the Magistrate Judge's Ruling (*see* Def.'s Obj. at 3).  However, Defendant's briefing on this Court's jurisdiction over the action relies exclusively on the presentment requirement.[2] Defendant only raised her contention that Plaintiff had failed to exhaust her administrative remedies at oral argument, after having abandoned her position on the presentment requirement, and thus Plaintiff did not have an opportunity to address the issue of exhaustion during the litigation of this fee petition.  Therefore, the Court finds that Defendant waived the exhaustion requirement in this case.  *See Mathews*, 424 U.S. at 328 ("Implicit . . . is the principle that this condition consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case.  The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted.")

Furthermore, courts may also waive the exhaustion requirement.  *See Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996).  "The factors courts have cited to excuse failure to exhaust are:  (1) that the claim is collateral to a demand for benefits; (2) that exhaustion would be futile; and (3) that plaintiffs would suffer irreparable harm if required to exhaust administrative remedies."  *Id.*  "[C]ourts should be flexible in determining whether exhaustion should be excused. . . . [N]o one element is critical to the resolution of the exhaustion issue; rather, a more general approach balancing the competing

---

[2] Defendant did argue that Plaintiff had failed to exhaust her claim in an earlier motion to dismiss, but did not renew this argument when the case was reopened. (*See* Def.'s Mem. Supp. [Doc. # 16] at 16–23.)

5

considerations to arrive at a just result is in order." *Id.* at 151 (internal citations and quotation marks omitted).  Here, the Court finds that the balance of the factors weighs in favor of excusing exhaustion.  As Judge Nevas noted in his TRO, "plaintiff . . . demonstrated that she w[ould] suffer irreparable harm if she continue[d] to be deprived of the home health care coverage provided by [D]efendant."  (TRO at 1.)  Furthermore, Plaintiff was subjected to repeated notifications of termination of benefits based on the continued improper application of the strict stability standard to the evaluation of her case, despite several successful expedited appeals.  (*See* Pl.'s Opp'n to Def.'s Obj. [Doc. # 66] at 6–8; Prendergast Decl. ¶¶ 5–17.)  Plaintiff would have suffered irreparable harm if she had been required to go without home health service benefits as the ravages of her ALS progressed in order to repeatedly pursue her administrative remedies in opposition to the improper use of this standard.  Thus, in consideration of the *Pavano* factors, the Court waives the exhaustion requirement and concludes that it has jurisdiction over Plaintiff's claims.

        2.     *Timeliness*

In objecting to the Ruling, Defendant raises the same timeliness argument that she advanced in opposition to Plaintiff's motion [Doc. # 37] to reopen the case and Plaintiff's motion for attorneys' fees and costs.  Specifically, Defendant objects to Magistrate Judge Margolis's determination that the operative date triggering the thirty–day deadline under the EAJA was the date of the Order of Dismissal [Doc. # 50] filed on July 28, 2011, rather than the administrative closing date of February 27, 2009.  As the Court explained at oral argument, an administrative closing is purely a docket management tool to remove a civil case from the active docket when its status is such that no further action can be taken until the occurrence of a particular event on an uncertain future date.  Upon that

6

occurrence, either side has an absolute right to have the case restored to the active docket. (*See* July 22, 2011 Tel. Status Conf. Tr. [Doc. # 59] at 2.)  Here, the parties filed a Consent Motion to Dismiss under Fed. R. Civ. P. 41(a)(2) in late July 2011, and dismissal was ordered on July 28, 2011.

Under the EAJA, a fee application must be filed within thirty days of final judgment, 28 U.S.C. § 2412(d)(1)(B), and "'final judgment' means a judgment that is final and not appealable," *id.* § 2412(d)(2)(G).  Plaintiff contends that:

> Since coverage continued until Ms. Prendergast's death, . . . [further] action was not necessary, but because of the possibility of a discontinuance of coverage, the case could not be terminated until she died.  At that point, [P]laintiff took the necessary action to restore the case to the active docket, effect an actual final judgment, and timely file the fee petition.

(Pl.'s Opp'n to Def.'s Obj. at 10.)  There is nothing in the record or as a matter of law to support Defendant's argument that the administrative closing ended the case,[3] and thus the Court agrees with Magistrate Judge's Ruling on this issue.  Defendant's objection that Plaintiff's fee petition was untimely is therefore overruled.

### 3. "Prevailing Party" Status

Defendant objects to the conclusion in the Ruling that Plaintiff is a "prevailing party" within the meaning of the EAJA, arguing that because the TRO was not based on the merits and only preserved the status quo, it is insufficient to confer such status on Plaintiff.

---

[3] In *Poff v. Gorusch*, 636 F. Supp. 710, 713 (W.D. Va. 1986), on which Defendant puzzlingly relied, the court concluded that "where a plaintiff requests and is granted a voluntary dismissal pursuant to Rule 41(a)(2), and such dismissal is not appealed by the United States, a plaintiff has 90 days from the voluntary dismissal date to file a motion for attorney's fees under the EAJA."  Here, Plaintiff did not "request" and receive a voluntary dismissal pursuant to Rule 41(a)(2) until July 2011, and timely filed her EAJA motion on August 19, 2011.

"[S]tatus as a prevailing party is conferred whenever there is a court ordered change in the legal relationship between the plaintiff and the defendant or a material alteration of the legal relationship of the parties." *Pres. Coal. of Eerie County v. Federal Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 694 (2001)).  The Second Circuit has specified that a grant of temporary relief may provide the basis for "prevailing party" status:

> [A] decision to award attorney's fees requires an analysis of whether the party's relief, whether by injunction or stay, resulted from a determination of the merits.  When a party receives a stay or preliminary injunction but never obtains a final judgment, attorneys' fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits.

*Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005) (quoting *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997)); *see also Bolling ex rel. Roberts v. Bd. of Educ. of City of Ansonia*, No. 3-07-cv-1593 (JCH), 2008 WL 349765, at *1 (D. Conn. Feb. 6, 2008) (citing *Vacchio* to find that a TRO satisfied this requirement).  "However, the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status." *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990).

Defendant relies on the TRO language stating that Plaintiff "has shown sufficiently serious questions going to the merits to make them a fair ground for litigation" (*see* TRO at 1), to argue that Judge Nevas did not reach the merits of Plaintiff's claims.  However, while this language reflects application of a less demanding standard than likelihood of success on the merits, the remainder of the order shows that a merits analysis of Plaintiff's eligibility claim was undertaken:

> [T]he skilled nursing care available through the home health care services authorized by [D]efendant's Medicare Part C program is medically reasonable and necessary and . . . [Plaintiff] is eligible for that care. Her eligibility is demonstrated both because the Secretary is incorrect to view her condition as stable and because the strict [stability] standard applied by the Secretary is contrary to Medicare policy and, in judging her need for skilled nursing care for her unique situation, it is apparent, as her doctors have shown, that she needs skilled nursing care.

(TRO at 1–2.) In light of this language, the Court finds that Magistrate Judge Margolis correctly concluded that Judge Nevas's decision to grant the TRO was "governed by [his] assessment of the merits." *Vacchio*, 404 F.3d at 673.

Defendant also argues that because Plaintiff never lost her home health care benefits, the TRO did not change the legal relationship between the parties. However, this argument is contrary to the evidence in the record showing that Plaintiff ceased receiving home health services on June 13, 2008. (*See* Prendergast Decl. ¶ 17.) It further ignores the language in the TRO reflecting Judge Nevas's determination that Defendant had withheld benefits from Plaintiff: "Accordingly, it is hereby ordered, adjudged and decreed that the defendant Secretary of Health and Human Services is enjoined from continuing to deny coverage of home health services through Medicare Part C to plaintiff Eileen Prendergast." (TRO at 2.) Because the TRO compelled Defendant to restore Ms. Prendergast's benefits, it necessarily altered the legal relationship between the parties. Thus, Magistrate Judge Margolis was correct in concluding that under *Vacchio*, the TRO was sufficient to confer "prevailing party" status on Plaintiff. Defendant's objection on this ground is therefore overruled.

    *4.*  *"Substantially Justified" Position*

  Defendant objects to Magistrate Judge Margolis's conclusion that because the Secretary never re-filed her motion to dismiss after it was voluntarily withdrawn, she could not meet her burden of showing that her position was substantially justified.

  Once a plaintiff has established prevailing party status, the burden shifts to the Secretary to demonstrate by a "strong showing" that her position was substantially justified. *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007). This requires a demonstration that both the underlying (pre-litigation) and litigation positions of the Secretary were reasonable. *Id.* The Magistrate Judge determined that Defendant could not meet her burden of a "strong showing" that her litigation position was substantially justified due to the "unusual history of this case"—namely, that Defendant had abandoned her motion to dismiss on the grounds of lack of jurisdiction when the case was reopened. Defendant's position on the Court's jurisdiction in this action has shifted multiple times throughout the case, most recently when Defendant abandoned her objection that Plaintiff could not meet the "presentment" requirement under 42 U.S.C. § 405(g). Thus, the Court concludes that Defendant's abandonment of her prior arguments left her unable to meet her high burden of showing that her previous position was "substantially justified."

  Furthermore, the Court also concludes that Defendant's underlying position was not "substantially justified," and thus she could not have met her burden on this issue. In permitting the use of the "Improvement Standard" rule of thumb to determine Plaintiff's eligibility, Defendant supported a position that has been soundly rejected by multiple courts within this Circuit. *See, e.g.*, *Friedman v. Sec'y of Dep't of Health & Human Servs.*, 819 F.2d 42, 45 (2d Cir. 1987) ("A determination of a Medicare claimant's need for skilled nursing care as opposed to custodial care should be guided by two principles. First, the

decision should be based upon a common sense, non–technical consideration of the patient's condition as a whole. . . . Second, the Social Security Act is to be liberally construed in favor of beneficiaries."); *Anderson v. Sebelius*, No. 5:08-cv-16, 2010 WL 4273238, at *6 (D. Vt. Oct. 25, 2010) ("A patient's chronic or stable condition does not provide a basis for automatically denying coverage for skilled services."); *Fox v. Bowen*, 656 F. Supp. 1236, 1247–48 (D. Conn. 1986) ("However, the Secretary cannot permit his intermediaries to use blanket rules not supported or authorized by any applicable law or regulations to deny what otherwise might be meritorious claims."); *see also Papciak v. Sebelius*, 742 F. Supp. 2d 765 (W.D. Pa. 2010) (reversing decision denying plaintiff's Medicare coverage because Secretary's decision did not consider the plaintiff's need for "skilled services to prevent further deterioration," and only concluded that plaintiff "lacked any restoration potential," requiring only custodial care). Thus, Defendant could not have made the required "strong showing" that her underlying position was "substantially justified," and Defendant's objection on this ground is overruled.

        5.     *Special Circumstances*

Finally, Defendant objects to Magistrate Judge Margolis's determination that there were no "special circumstances" rendering an award of fees and costs in this case "unjust." (Def.'s Obj. at 17–18.)

Under 42 U.S.C. § 2412(d)(1)(A), a court has discretion to "deny awards where equitable considerations dictate an award should not be made." *Scarborough v. Principi*, 541 U.S. 401, 42–23 (2004); *see also Vincent v. Comm'r of Social Security*, 651 F.3d 299 (2d Cir. 2011). As discussed in *Vincent*, the Second Circuit has found such "special circumstances" existed on just two separate occasions. *Vincent*, 651 F.3d at 303 ("The Second Circuit has spoken only twice in published opinions to the question of what

constitutes special circumstances that make an award unjust.") In *Oguachuba v. I.N.S.*, 706 F.2d 93 (2d Cir. 1983), the court concluded that the plaintiff's "extraordinary persistence in evading the lawful efforts of the INS to deport him," *id.* at 94, such that his "own conceded history of repeated and flagrant misconduct caused the improper incarceration that he successfully challenged," *Vincent*, 651 F.3d at 303, constituted special circumstances barring an award of fees under the EAJA. In *United States v. 27.09 Acres of Land*, 43 F.3d 769 (2d Cir. 1994), the Second Circuit also concluded that special circumstances existed because the party seeking fees "played only a marginal role in the litigation." *Vincent*, 651 F.3d at 304.

In this case, Plaintiff neither caused the denial of her home health service benefits, nor played a marginal role in the litigation such that either of the recognized special circumstances exists. Furthermore, Defendant cites no case law in which "special circumstances" were found in a situation analogous to the one at bar. Therefore, the Court finds Magistrate Judge Margolis was correct in her conclusion that there were no special circumstances in this case that would make it unjust to award Plaintiff her attorneys' fees and costs under the EAJA.

### B.     Plaintiff's Objections

#### 1.     Termination of Prevailing Party Status

Plaintiff objects to Magistrate Judge Margolis's finding that her status as a "prevailing party" terminated on October 17, 2008 because the parties reached a voluntary resolution to the case after the expiration of Judge Nevas's TRO. However, the Supreme Court has held that "the determination that a claimant is a 'prevailing party,' . . . [is] a one–time threshold for fee eligibility." *Comm'r I.N.S. v. Jean*, 496 U.S. 154, 160 (1990) ("The 'prevailing party' requirement is a generous formulation that brings the

plaintiff only across the statutory threshold.") (internal citations and quotation marks omitted). *Cf. Trichilio v. Sec'y of Health & Human Servs.*, 832 F.2d 743, 745 (2d Cir. 1987) ("However, as we noted in our original opinion, Congress has made clear that it is inappropriate to examine separate parts of the litigation to determine whether the government's position in each phase was justified. Instead, as long as the government's underlying substantive position was not "substantially justified," the plaintiff is entitled to recover *all* reasonable attorney's fees incurred." (emphasis in original)). Therefore, Plaintiff's prevailing party status, once established, could not be terminated. Plaintiff's objection on this ground is sustained, and the Court will award all of the fees for Attorney Murphy's and Attorney Deford's work from 2008 to 2011.[4]

### 2.   *Attorney Stein's and Attorney Sheehan's Fees*

Next, Plaintiff objects to the Magistrate Judge's decision to "disregard" the work of two of her attorneys, Attorney Stein and Attorney Sheehan, on the basis that it was duplicative to have four attorneys working on one matter at the same time. Specifically, Magistrate Judge Margolis found that Attorney Sheehan's work "consisted almost exclusively of communicating with plaintiff and participating in conferences," and that Attorney Stein's work "consisted primarily of coordinating matters between counsel." (Ruling at 27–28.)  "A court has broad discretion to 'trim the fat' in an application for attorneys' fees, and to eliminate excessive or duplicative hours." *Empire State Carpenters Welfare v. Hanna Contracting, Inc.*, CV 10-243 JS ARL, 2011 WL 845083, at*2 (E.D.N.Y. Feb. 8, 2011) *report and recommendation adopted*, 2011 WL 846184 (E.D.N.Y. Mar. 7,

---

[4] However, the Court agrees with Magistrate Judge Margolis that the 2.4 hours billed by Attorney Deford in 2008 for "legal research on organization standing," are not relevant to the issues in this case, and therefore will exclude 2.4 hours of work from Attorney Deford's 2008 hours.  Plaintiff has indicated that she does not object to this reduction. (Pl.'s Obj. at 14.)

2011). However, prevailing parties are not barred as a matter of law from receiving fees for the work of multiple attorneys on a case. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 771 F.2d 1136, 1146 (2d Cir. 1983).

In her opposition, Plaintiff argues that the work of Attorney Sheehan and Attorney Stein was not duplicative because Attorney Sheehan served as the sole point person communicating with Ms. Prendergast and her family to gather the necessary information for the TRO, and Attorney Stein added significant value to the work on the TRO because she was a leading expert on the issue of the Improvement Standard and actually served as lead counsel during oral argument on the TRO motion. (*See* Pl.'s Obj. at 8.) Thus, the Court concludes that Attorney Sheehan's and Attorney Stein's work in 2008 was not entirely duplicative. Therefore, Plaintiff's objection on this ground is sustained. However, courts in this Circuit often reduce an attorney's fee award by a certain percent "across–the–board" in cases where there is duplicative work. *See, e.g.*, *Bridgeport & Port Jefferson Steamboat Co.*, 3:03-cv-599 (CFD), 2011 WL 721582, at *8 (D. Conn. Feb. 22, 2011) ("[S]ome efforts were duplicated and inter–firm communications took extra time. . . . For these reasons, the court will apply an additional fifteen percent across–the–board reduction to the hours billed in this case." (citing *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 255 (S.D.N.Y. 2010) (making ten percent across–the–board reduction for duplication of effort when five veteran attorneys who worked the case all billed at the top rate))). Therefore, because the Court agrees that there was some duplication of efforts in drafting the briefings in this case, and attending and preparing for the TRO hearing, and because the billing records were insufficiently detailed, *see Anderson v. Sibelius*, 5:09-CV-16 (CR), 2011 WL 1832771, at *5 (D. Vt. May 12, 2011) (holding that "[w]ithout detailed entries in the billing records, the court is unable to

14

determine whether and when the contributions of the three attorneys were duplicative," and applying a twenty percent across–the–board cut), the Court reduces the total amount of non–travel hours billed in 2008 by fifteen percent.

        3.      *Fees Incurred in Relation to the Fee Petition*

Plaintiff objects to the Magistrate Judge's disallowance of fifteen hours of time billed in 2011 by Attorneys Deford and Gifford in preparing the Motion to Restore to the Active Docket, the Statement Noting Death of Plaintiff Prendergast [Doc. ## 42, 43], and the Amended Complaint [Doc. # 47] as work not rendered in connection with Plaintiff's fee motion.  The Ruling only awarded the specific hours billed under the motion for attorneys' fee in the award.  (*See* Ruling at 27–28.)  Plaintiff argues that "fees should be awarded both for work on the fee motion and for work on a portion of the case that was a necessary condition for filing a fee motion." (Pl.'s Obj. at 9–10.)  The Second Circuit has considered and affirmed that the EAJA allows "to prevailing plaintiffs their attorney's fees for the fee application itself."  *Trichilio v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 707, *supplemented*, 832 F.2d 743 (2d Cir. 1987) ("We regard it as more consistent with the congressional purpose to treat plaintiff's fee application as part of the government's cost of taking positions that are not substantially justified.").  The Court concludes, as defense counsel conceded at oral argument, that without the work to change Plaintiff's name in the caption, amend the Complaint, and restore the case to the active docket, Plaintiff could not have filed this fee motion, and thus the work on these matters was related, as a necessary predicate, to the fee application itself.  Therefore, the fifteen hours in which

Attorneys Deford and Gifford worked on these tasks will be restored to the award and Plaintiff's objection on this ground is sustained.[5]

    4.    One–Third Reduction

Finally, Plaintiff objects to Magistrate Judge Margolis's determination that the total fee award should be reduced by thirty-three percent on the basis that "[P]laintiff apparently failed to advise [D]efendant that she was preserving her potential to seek such fees." (Ruling at 31.) The Second Circuit has recognized that "[a] district court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee. . . . However, such adjustments *are appropriate only in rare circumstances*, because the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." (emphasis added and internal citations omitted). In similar EAJA litigation, district courts have reduced attorneys' fees for inefficiency, lack of success on certain claims, and insufficiently detailed billing records. *See, e.g.*, *Anderson*, 2011 WL 1832771, at *5–6. Nonetheless, the Court is unable to identify any case law supporting the contention that a plaintiff's failure to notify the defendant of his or her intention to seek attorneys' fees is a "rare circumstance" justifying an across-the-board reduction, let alone one of such magnitude. Furthermore, "[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), and as defense counsel conceded, plaintiff's counsel could not have achieved a more successful outcome for their client. Therefore, the Court concludes that the one-third reduction to the overall fees was error, and the Plaintiff's objection on this ground is sustained.

---

[5] Plaintiff will also be awarded fees for the additional 29.3 hours of work performed by Attorney Deford in objecting to the Magistrate Judge's Ruling and opposing Defendant's objections to the same.

### C. Calculation of Reasonable Attorneys' Fees

Based on the modifications to the Ruling discussed above, the Court awards attorneys' fees as follows:[6]

| | Hours Allowed for Fee Award | | | | |
|---|---|---|---|---|---|
| **Yearly and Hourly Rate** | **Deford** | **Murphy** | **Sheehan** | **Stein** | **Gifford** |
| 2008 ($176.25) | 89.76 (plus 6 hours of travel) | 123.67 (plus 3 hours of travel) | 31.45 (plus 3 hours of travel) | 34.25 (plus 3 hours of travel) | 0 |
| 2009 ($176.25) | 3.0 | 26.1 (plus 3 hours of travel) | 11.6 | 2.2 | 0 |
| 2010 ($180.00) | 0 | 0 | 3.0 | 0 | 0 |
| 2011 ($183.75) | 66.4 | 1.1 | 1.2 | 0 | 14.9 |

---

[6] Defendant has not objected to Plaintiff's requested hourly rate, which is reduced to $88.13 per hour for hours of travel. The hours allowed reflect the reduction of Attorney Deford's hours by 2.4 hours in 2008 for "legal research on organizational standing," and the addition of 29.3 hours in 2011 for Attorney Deford's work on the objections to the Ruling, as well as the fifteen percent reduction to each attorney's non–travel hours in 2008.

17

| Total Fee Award | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **2008 Fee** | **2009 Fee** | **2010 Fee** | **2011 Fee** | Total |
| Deford | $16,348.98 | $528.75 | $0 | $12,201.00 | $29,078.73 |
| Murphy | $22,061.23 | $4,864.52 | $0 | $202.13 | $27,127.88 |
| Sheehan | $5,807.45 | $2,044.50 | $540 | $220.50 | $8,612.45 |
| Stein | $6,300.95 | $387.75 | $0 | $0 | $6,688.70 |
| Gifford | $0 | $0 | $0 | $2,737.88 | $2,737.88 |
| GRAND TOTAL | | | | | $74,245.64 |

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion [Doc. # 52] for Attorneys' Fees is GRANTED in part, and Magistrate Judge Margolis's Ruling [Doc. # 60] is ADOPTED as modified. The Court awards $74,245.64 in attorneys' fees and $835.50 in costs,[7] for a total of $75,081.14.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2013.

---

[7] Defendants have not objected to Plaintiff's costs.